UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARINA N.[1],

                            Plaintiff,                        Civil Action No. 23-12426

v.                                                   Terrence G. Berg
                                                     United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                          David R. Grand
                                              United States Magistrate Judge

                              Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

Plaintiff Sarina N. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 12), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Summary Judgment **(ECF No. 12)** be **GRANTED**, Plaintiff's Motion for Summary

Judgment **(ECF No. 10)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Plaintiff was 45 years old at the time of her alleged onset date of April 13, 2019,

and at 5' tall weighed approximately 240 pounds.  (PageID.75, 102, 253, 265).[2]  She did

not graduate from high school but earned a GED.  (PageID.76-77, 266).  She previously

worked as a quality inspector for a machinery parts manufacturer, but she stopped working

in April 2019 because of her medical conditions.  (PageID.77-78, 83, 256, 265-66, 271).

She now alleges disability primarily as a result of diabetes, anxiety, panic attacks, and

depression.  (PageID.102, 265).

After Plaintiff's applications for DIB and SSI were denied at the initial level on May

10, 2021 (PageID.142-45, 147-50), and on reconsideration on September 18, 2021

(PageID.163-64, 166-69), she timely requested an administrative hearing, which was held

on March 17, 2022, before ALJ Crystal White-Simmons (PageID.71-99).  Plaintiff, who

was represented by attorney Amale Knox, testified at the hearing, as did vocational expert

Sherry Ronning.  (*Id.*).  On May 4, 2022, the ALJ issued a written decision finding that

Plaintiff is not disabled under the Act.  (PageID.57-66).  On August 8, 2023, the Appeals

Council denied review.  (PageID.34-39).  Plaintiff timely filed for judicial review of the

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 8-1.

final decision on September 25, 2023.  (ECF No. 1).

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 13, 2019 (the alleged onset date). (PageID.59). At Step Two, the ALJ found that she has the severe impairments of obesity and adjustment disorder with mixed anxiety and depression. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.60).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no work at unprotected heights; no exposure to extreme heat or humidity; and only occasional interaction with the public and coworkers. (PageID.61).

At Step Four, the ALJ found that Plaintiff is capable of performing her past relevant work as a parts inspector. (PageID.64). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.65).

4

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In her motion for summary judgment, Plaintiff argues that the ALJ erred in two respects: (1) by failing to incorporate a concentration, persistence, or pace ("CPP") limitation into the RFC after finding that she had a "mild" limitation in that area; and (2) by failing to consider the consultative examiner's psychiatric evaluation as a medical opinion or evaluate its persuasiveness. (ECF No. 10, PageID.568-82). For the reasons set forth below, the Court finds no legal error warranting remand.

### 1.    *The Relevant Medical Evidence*[3]

Although Plaintiff alleges a disability onset date of April 13, 2019, there are no medical records between August 2018[4] and January 2021. In January 2021, Plaintiff saw

---

[3] Because Plaintiff's legal arguments center on her mental impairments, the Court will focus its discussion of the medical evidence on evidence pertaining to those conditions.

[4] In June 2018, almost a year before her alleged onset date, Plaintiff saw Patricia Tiernan, RN, NP-C, for complaints of anxiety. (PageID.413-17). NP Tiernan noted that Plaintiff was alert and oriented, pleasant and cooperative, and in no apparent distress. (PageID.414, 416). Based on

Katherine Byl, PA-C, for diabetes.  (PageID.389).  Plaintiff's depression screening was negative, and PA Byl observed that she had normal mood and affect, with normal recent memory.  (PageID.391-92).  Plaintiff saw PA Byl again in early February 2021, reporting increased anxiety and panic attacks due to life stressors – namely, being unemployed.  (PageID.387).  She appeared to have a depressed mood but said she was not interested in therapy and wanted "to manage [her symptoms] on her own"; however, she did speak with a behavioral health specialist after this visit.  (PageID.387-88).  In late February 2021, Plaintiff returned to see PA Byl for her diabetes but did not mention feeling depressed or anxious, and she had normal mood and affect.  (PageID.382-83).

On March 10, 2021, Plaintiff met with therapist Michelle McGarrity, Ph.D.  (PageID.377).  While Plaintiff appeared anxious and somewhat guarded, Dr. McGarrity noted that she was engaged, cooperative, and pleasant during the session.  (PageID.379).  There is no indication in the record that Plaintiff ever followed up with Dr. McGarrity.

On March 15, 2021, Plaintiff returned to see PA Byl for her diabetes.  (PageID.372).  She reported that she had increased stress due to difficulty paying bills; felt depressed and hopeless at times; and had experienced 4-5 panic attacks per week in the prior two weeks.  (PageID.375).  She also indicated that she had stopped taking sertraline because "it made

---

Plaintiff's complaints, NP Tiernan diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, social anxiety disorder, and agoraphobia.  (PageID.416).  NP Tiernan prescribed sertraline and recommended that Plaintiff see a psychiatrist; Plaintiff declined to do so, however, indicating she wanted to "try [the] medication first and see how she [did]."  (PageID.417).  In August 2018, Plaintiff saw Jeffrey Ghioto, D.O. for a follow-up visit regarding her diabetes; at that time, Dr. Ghioto observed that Plaintiff had normal mood and affect, and that her depression and anxiety were "stable."  (PageID.420, 422).  He continued Plaintiff on sertraline.  (PageID.422).

her feel funny." (*Id.*).  PA Byl observed that Plaintiff had normal mood and affect, but she started Plaintiff on Lexapro and hydroxyzine.  (PageID.375-77).  While Plaintiff stated that depression was "sometimes a problem for her," she also reported being "comfortable with managing [the] skills and steps" to address her depression.  (PageID.379).

In April 2021, Plaintiff saw PA Byl and reported that Lexapro was helping her feel less depressed and focus better.  (PageID.460-63).  PA Byl noted that Plaintiff had "no showed" to her therapy appointments, and she observed that Plaintiff had a normal mood and affect.  (PageID.463).  PA Byl increased Plaintiff's Lexapro dosage and advised her to attend therapy.  (PageID.464).

Plaintiff saw PA Byl three months later, in July 2021, reporting that she continued to feel anxious and experience panic attacks 2-3 times per week when she tried to leave the house.  (PageID.455, 458).  However, she denied feeling depressed and stated that her symptoms were "much improved" with Lexapro.  (PageID.458).  On examination, Plaintiff had normal mood and affect, was active and alert, and was in no acute distress.  (*Id.*).  In September 2021, Plaintiff saw Kai Palm, M.D. for diabetes.  (PageID.537).  She did not complain of anxiety or depression at the appointment, and Dr. Palm observed that Plaintiff had normal mood and affect and was in no distress.  (PageID.540).

In December 2021, Plaintiff saw L. Imasa, M.D. at the request of the state agency for a psychiatric evaluation.  (PageID.520-523).  Plaintiff reported that she experienced depression and anxiety attacks, took medications prescribed by her primary care provider, and was not seeing a therapist.  (PageID.520).  Dr. Imasa noted that Plaintiff appeared mostly depressed, her focus and concentration tended to wander, and her memory was at

times forgetful.  (PageID.521).  Dr. Imasa further observed that Plaintiff was in fairly good contact with reality, responded to questions spontaneously, had no pressured speech, and showed no indications of hallucinations, delusions, or obsessions.  (*Id.*).  She was "able to give information" and "[c]ognitively, she did fairly well in general."  (PageID.522).  Dr. Imasa diagnosed Plaintiff with major depressive disorder with anxious distress and noted that her prognosis was "[g]uarded to fair, with continuing treatment."  (*Id.*).

The following month, in January 2022, Plaintiff saw Dr. Palm for diabetes and explained that she had an exacerbation of her anxiety and depression symptoms due to her finances and fear of leaving the house.  (PageID.531-534).  Upon examination, Dr. Palm observed that Plaintiff was oriented and in no distress.  (PageID.534).  He continued Plaintiff on her medications and recommended that she see a psychiatrist.  (*Id.*).

Plaintiff next saw Dr. Palm about eight months later, in September 2022. (PageID.48).  Dr. Palm noted that Plaintiff was prescribed medications for her adjustment disorder with mixed anxiety and depressed mood but did not provide any other information about Plaintiff's mental impairments.  (PageID.48-53).[5]

### 2. *The ALJ Properly Concluded that the Evidence Does Not Support Including a CPP Limitation in Plaintiff's RFC*

As set forth above, the ALJ found that Plaintiff has the severe impairment of

---

[5] On May 10, 2021, state agency psychological consultant James Tripp, Ph.D. reviewed the medical evidence of record.  (PageID.102-113).  Dr. Tripp opined that Plaintiff had a "mild" limitation in her ability to concentrate, persist, or maintain pace, but no limitation in her ability to understand, remember, or apply information; interact with others; or adapt or manage oneself. (PageID.104, 110).  Accordingly, Dr. Tripp determined that Plaintiff did not have a severe mental impairment and did not require mental work limitations.  (PageID.105, 111).  These findings were affirmed at the reconsideration level.  (PageID.115-127).

adjustment disorder with mixed anxiety and depression (PageID.59-60) and concluded in her "paragraph B" analysis at Step Two that Plaintiff has a "moderate limitation" in interacting with others, a "mild limitation" in CPP, and "no limitation" in understanding, remembering, or applying information, or adapting or managing oneself (PageID.60-61). The ALJ then concluded that Plaintiff has the RFC to perform light work with certain exertional limitations, as well as one mental limitation – "only occasional interaction with the public and coworkers." (PageID.61). The ALJ did not include a limitation with respect to Plaintiff's ability to maintain CPP. Plaintiff argues that the ALJ erred in failing to include such a limitation or explain why no limitation was necessary. The Court disagrees.

To begin with, Plaintiff is correct that, during her analysis of the paragraph B criteria, the ALJ found that Plaintiff has a mild limitation with regard to maintaining CPP. (PageID.61). In making this finding, the ALJ cited to a function report, where Plaintiff reported that her anxiety and depression keeps her from being focused, and that she enjoys reading and watching television daily but has difficulty focusing on these things.[6] (*Id.*) (citing PageID.295, 299). The ALJ also cited to Dr. Imasa's consultative examination report, which *the ALJ interpreted* as indicating that Plaintiff's "focus and concentration

---

[6] The Court notes that, in a prior function report, when asked to identify issues affected by her conditions, Plaintiff did not check the boxes for memory, completing tasks, concentration, understanding, or following instructions. (PageID.283). She also indicated she can pay attention for one hour, finishes what she starts, and follows written and spoken instructions well. (*Id.*). Thus, the ALJ certainly cannot be said to have "cherry-picked" evidence undercutting Plaintiff's allegations of disability, as she cited instead the function report more favorable to Plaintiff.

[were] observed to wander." (PageID.61).[7] Plaintiff argues, then, that the RFC should have included some kind of restriction to reflect her mild limitation in maintaining CPP.

As the Commissioner points out, however, the paragraph B ratings are used to determine whether a claimant's mental impairments are severe or meet a Listing at Steps Two and Three, whereas the RFC finding is the most a claimant can do despite her impairments (and is made prior to Step Four). (ECF No. 12, PageID.601-02). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520a(d), 404.1545(a), 416.920(a)(4)(iv), 416.920a(d), 416.945(a). And Social Security Ruling 96-8p distinguishes between the paragraph B criteria findings and the RFC determination, explicitly stating "that the limitations identified in the 'paragraph B' … criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *4 (July 2, 1996). Thus, contrary to Plaintiff's argument, the ALJ's findings with respect to the paragraph B criteria are not intended to assign mental RFC limitations, but, rather, to assist the ALJ in determining the severity of a claimant's mental impairments.

As Plaintiff concedes, district courts in the Sixth Circuit have "held that an ALJ is not required to include Paragraph B … findings …into his or her RFC determination." (ECF No. 10, PageID.572) (citing *Benitez v. Saul*, No. 3:19CV-00392-RSE, 2020 WL

---

[7] It is not entirely clear whether Dr. Imasa actually "observed" Plaintiff's focus and concentration to wander, of if Plaintiff reported experiencing that issue. While Dr. Imasa's note falls under the section heading titled "Mental Status Examination/Description Of," the note also states, "***No reports*** or indications of any hallucinations … but ***described*** signs and symptoms of depression …." (*Id.*) (emphasis added). Moreover, elsewhere in the report, Dr. Imasa noted that Plaintiff "responded to questions spontaneously" and had "no pressured speech or thought blocking." (*Id.*).

4820717, at *6 (W.D. Ky. Aug. 19, 2020) and *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014)).  Indeed, as this Court has held, there is no requirement that the RFC must include limitations corresponding mild findings in the paragraph B criteria.  *See Stephen T. C. v. Comm'r of Soc. Sec.*, No. 23-10821, 2024 WL 948592, at *6 (E.D. Mich. Mar. 5, 2024); *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018) (collecting cases); *Burrell v. Comm'r of Soc. Sec.*, No. 14-14529, 2016 WL 1165994, at *10 (E.D. Mich. Feb. 29, 2016); *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017).[8]  Thus, Plaintiff's argument that the ALJ erred by failing to include a CPP limitation in the RFC determination is without merit.

Plaintiff also argues that regardless of whether the ALJ was *required* to incorporate a CPP limitation in the RFC, she was obligated to explain why she *omitted* such a limitation from the RFC determination.  (ECF No. 10, PageID.572; ECF No. 13, PageID.615 ("… the omission of any accommodation **must** be explained by the ALJ") (emphasis in original)).  While "an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis[,]" *Taylor*, 2018 WL

---

[8] Similarly, other district courts in the Sixth Circuit have held that an ALJ's finding of mild limitations regarding the paragraph B factors does not mandate inclusion of any mental limitations in the RFC.  *See, e.g., Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *6 (N.D. Ohio Apr. 4, 2023) ("Notably, Claimant's mild limitations do not automatically mandate specific limitations in the RFC."); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017) ("Contrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not *require* inclusion of mental limitations into the RFC.") (emphasis in original).

3887521, at *6, that is not what occurred in this case.

Here, although the ALJ certainly could have better articulated her analysis and reasoning, it is clear from a review of her decision that the ALJ did in fact consider Plaintiff's mental impairments in the RFC analysis and conclude that they did not warrant a CPP limitation.   The RFC section of the ALJ's decision begins, "After careful consideration of the entire record," and provides the additional prefatory explanation that the "residual functional capacity assessment reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis."   (PageID.61).   In the RFC section's substantive discussion, the ALJ emphasized that her RFC finding was based on "all symptoms" and repeated several of Plaintiff's specific mental capabilities and obstacles that were previously mentioned in the mental function analysis.   (PageID.62-63).   For example, the ALJ referenced Plaintiff's allegations that she has difficulty remembering, completing tasks, and concentrating.   (*Id.*, PageID.62) (citing PageID.300).   She considered Plaintiff's consultative examination with Dr. Imasa and his note that Plaintiff's focus and concentration tended to wander.   (*Id.*, PageID.63) (citing PageID.521).[9]   However, the ALJ also cited numerous medical records reflecting that Plaintiff had normal mood and affect, was fully oriented, engaged, cooperative, and had normal recent memory.   (PageID.62-63) (citing PageID.375 ("normal mood and affect and active and alert"), 379 ("o[riented] x 3," "engaged somewhat guarded," "cooperative," "pleasant," "normal speech tone and

---

[9] As noted above, *see supra* at 11 n.7, it is unclear whether Dr. Imasa observed this issue or Plaintiff reported it.   Moreover, elsewhere in the same report, Dr. Imasa noted that Plaintiff "responded to questions spontaneously" and had "no pressured speech or thought blocking."   (*Id.*).

cadence")[10], 458 ("normal mood and affect and active and alert"), 482 ("normal mood and affect and active and alert" and "recent memory normal"), 540 ("normal mood and affect")).[11]  And, the ALJ considered Plaintiff's treatment history, which indicated that she did not see a therapist and was treated only by a primary care physician.  (PageID.63).  The ALJ further noted that Plaintiff's mental impairments improved with medication compliance and consistent treatment, and that Plaintiff was able to care for herself.  (*Id.*).  Taking all of these facts into account, the ALJ concluded that the only mental limitation warranted based on the evidence was a social interaction limitation.  (PageID.63-64).

This explanation of Plaintiff's mental impairments "supplies substantial evidence supporting [the ALJ's] decision to omit [CPP] limitations into Plaintiff's RFC."  *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217, at *5, 6 (S.D. Ohio Aug. 21, 2017) (finding that a mild mental impairment did not require inclusion of mental limitations in the RFC as "the ALJ offered a thorough analysis, which included consideration of Plaintiff's allegations and hearing testimony, medications, treatment history/lack of treatment history, the opinion of Dr. Reece, and a function-by-function discussion of the 'Paragraph B' criteria"); *see also Taylor*, 2018 WL 3887521, at *6 ("The ALJ was merely required to consider Taylor's mental limitations in formulating the RFC.  He clearly did this here."); *Stephen T. C.*, 2024 WL 948592, at *7 (noting that ALJ's explanation of why mild deficits in paragraph B criteria do not cause any functional limitations "need not be

---

[10] At this visit, Plaintiff reported being "comfortable with managing" her depression.  (*Id.*).

[11] Indeed, the *absence* of repeated and significant mentions in the medical records of instances where Plaintiff struggled to maintain concentration or focus is notable.

explicit" so long as "the Court can follow the ALJ's rationale"). Here, then, while the ALJ's analysis could have been more thorough, particularly under the deferential standards that apply, *see supra* at 5-6, that does not necessarily mean it is legally erroneous. Indeed, a reading of the decision as a whole shows that the ALJ did in fact consider Plaintiff's mental impairments and her ability to concentrate, persist, or maintain pace, but concluded that a limitation in that area was not warranted based on the evidence. That is all that is required. *See Mehay v. Comm'r of Soc. Sec.*, No. 19-12991, 2021 WL 1175285, at *6 (E.D. Mich. Mar. 29, 2021) ("The RFC does not need to reflect impairments if the record supports a finding that the impairments do not result in functional limitations."). Thus, the ALJ did not err by declining to include a CPP limitation in Plaintiff's RFC.

3.    *The ALJ Was Not Required to Evaluate the Persuasiveness of*
*Dr. Imasa's Report Because It Was Not a "Medical Opinion"*

Plaintiff also argues that the ALJ erred by failing to treat Dr. Imasa's psychiatric report as a medical opinion and evaluate its persuasiveness under 20 C.F.R. § 404.1520c. (ECF No. 10, PageID.576-82). For the reasons set forth below, the Court disagrees.

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions in their decision. 20 C.F.R. § 404.1520c(b)(2). In turn, the regulations define a medical opinion as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in … [her] ability to perform mental demands of work activities, such as

understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting ….” 20 C.F.R. § 404.1513(a)(2)(ii).  Unlike medical opinions, however, the regulations do not expressly require the ALJ to evaluate “other medical evidence,” which is defined as “evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant’s] impairments, [the claimant’s] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.” 20 C.F.R. § 404.1513(a)(3).

At issue here is a three-page report completed by Dr. Imasa at the request of the state agency on December 8, 2021. (PageID.520-22).  As part of that evaluation, Dr. Imasa observed Plaintiff “sitting and rocking … while in a sitting position.” (PageID.521).  Dr. Imasa also conducted a “mental status examination” of Plaintiff, noting: “Focus and concentration, tends to wander.  Memory at times is forgetful.”  (*Id.*).  At the same time, however, Dr. Imasa stated that Plaintiff was “able to give information … and [c]ognitively, she did fairly well in general.” (PageID.522).  Dr. Imasa diagnosed Plaintiff with major depressive disorder with anxious distress and characterized her prognosis as “[g]uarded to fair, with continuing treatment.”  (*Id.*).

Plaintiff argues that although the ALJ “summarized the content of Dr. Imasa’s report, [she] erred by failing to evaluate the doctor’s opinion.” (ECF No. 10, PageID.580) (citing PageID.63).  But the Court agrees with the Commissioner that Dr. Imasa did not provide a “medical opinion” within the meaning of the applicable regulations and, thus, the Commissioner was not required to determine its persuasiveness.  The Court begins with

Dr. Imasa's observations during the psychiatric evaluation – that Plaintiff's focus and concentration tended to wander and that her memory was at times forgetful, neither of which describe "what [Plaintiff] can still do despite [her] impairment(s)[.]" See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Nor did these statements of Dr. Imasa explain whether Plaintiff had impairment-related limitations or restrictions in her ability to perform certain mental demands of work activities, such as understanding; remembering; maintaining CPP; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting. *See id.*; *see also Lindsey v. Comm'r of Soc. Sec.*, No. 21-10590, 2022 WL 1397196, at *6 (E.D. Mich. Apr. 11, 2022) ("Because Dr. Hugget did not include restrictions in her opinion, her opinion is not a medical opinion under the Social Security regulations."). Rather, the statements referenced above were objective mental status observations.[12] *See Tony F. P. v. Comm'r of Soc. Sec.*, No. 22-11736, 2023 WL 5810414, at *5 (E.D. Mich. May 18, 2023) (findings from mental status examinations are considered "objective medical evidence").

There is a difference between Dr. Imasa's note in the psychiatric report – that Plaintiff's focus and concentration tended to wander and her memory was at times forgetful

---

[12] Courts in this district have rejected the argument that a doctor's objective observations upon examination constitute a medical opinion. *See, e.g., Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at *6 (E.D. Mich. Jan. 18, 2022) (rejecting the plaintiff's "assertion that the ALJ was required to assess the persuasiveness of [the surgeon's] objective findings" that she had fair to poor functioning in her hands because "[o]bjective test results are not medical opinions"); *Neil F. v. Comm'r of Soc. Sec. Admin.*, No. 22-10789, 2023 WL 5486243, at *8 (E.D. Mich. May 12, 2023) (rejecting the plaintiff's argument that the ALJ erred by failing to analyze the consultative examiner's "opinion" about his ability to handle, finger, feel, and reach because the consultative examiner simply "provided his examination findings," not an opinion about the plaintiff's physical limitations).

– and an opinion that, for example, Plaintiff would not have difficulty performing repetitive, routine, and simple tasks, which would describe what she could still do despite her impairments. *See, e.g., Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at *5-6 (E.D. Mich. Jan. 18, 2022) (explaining the difference between an observation upon objective examination and an opinion that describes what the plaintiff can do despite her impairments). Even assuming the statements in Dr. Imasa's psychiatric report were observations from objective mental status examinations, *see supra* at 13 n. 9, they do not constitute medical opinions, and, thus, the ALJ was not required to consider the statements' persuasiveness. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Rather, the ALJ properly considered Dr. Imasa's psychiatric report as other medical evidence, *see* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3), which she clearly discussed and considered. (PageID.63). *See Dibella v. Comm'r of Soc. Sec.*, No. 21-11142, 2022 WL 5082287, at *5 (E.D. Mich. July 29, 2022) (rejecting argument that doctor's evaluation – which referenced tests performed and recommendations based on that testing – was a "medical opinion" because it contained no specific statement regarding mental function limitation in work activities); *see also Neil F.*, 2023 WL 5486243, at *9 ("And although the ALJ did not examine Dr. Nossoni's statements in that portion of his opinion where he evaluated medical opinions, he did acknowledge these findings ….").[13]   Accordingly, the ALJ properly

_____

[13] Courts outside the Sixth Circuit have similarly concluded that when a doctor does not provide a medical opinion regarding a claimant's work-related functional abilities, the ALJ is not required to evaluate the persuasiveness of such evidence in formulating the claimant's RFC. *See Cheryl M. v. O'Malley*, No. 23-cv-0381-DEB, 2024 WL 1349041, at *4 (S.D. Cal. Mar. 29, 2024) (while doctor's statements "discuss[ed] Plaintiff's limitations, they do not address what she can still do despite [her] impairments" and, thus, are not medical opinions) (internal quotations omitted);

addressed the medical evidence from Dr. Imasa's psychiatric report and did not err by failing to specifically evaluate its persuasiveness.

The Court now turns to Dr. Imasa's statements diagnosing Plaintiff with major depressive disorder with anxious distress and characterizing her prognosis as "[g]uarded to fair, with continuing treatment." (PageID.522). In her reply brief, Plaintiff concedes that Dr. Imasa's report "did not provide explicit restrictions" and "did not explicitly discuss what [she] can or cannot do despite her impairments," but she cites *Cooper v. Comm'r of Soc. Sec.*, No. 16-11567, 2017 WL 3484494, at *3 (E.D. Mich. Aug. 15, 2017) for the proposition that because Dr. Imasa's evaluation "clearly stated the Plaintiff's diagnosis, prognosis and symptoms[,]" it is a medical opinion. (ECF No. 13, PageID.619-20). But *Cooper* relied on the regulations defining medical opinions for claims filed *prior* to March 27, 2017; the revised regulations that apply here make clear that a medical source's "clinical findings, diagnosis, treatment prescribed with response, or prognosis" constitute "other medical evidence," not a "medical opinion." 20 C.F.R. § 404.1513(a)(3). Thus, Plaintiff's reliance on *Cooper* is misplaced.

---

*Harvell v. Comm'r of the Soc. Sec. Admin.*, No. CIV-19-109-RAW-KEW, 2020 WL 4196465, at *4-5 (E.D. Okla. June 11, 2020) (determining no medical opinion existed regarding functional limitations for the ALJ to evaluate in formulating the claimant's RFC where the doctor's examination report consisted only of clinical findings); *Nancy May J. v. Kijakazi*, No. 2:20-cv-00486-CWD, 2022 WL 684372, at *5 (D. Idaho Mar. 8, 2022) (determining the ALJ did not fail to evaluate doctor's report in formulating the claimant's RFC pursuant to the 20 C.F.R. § 416.920c(c) factors because the report – which contained clinical findings and observations, diagnoses, and treatment recommendations – did not constitute a medical opinion); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding the ALJ correctly refused to consider doctor's description of a claimant's ability to perform in the workplace as "limited" or "fair" in formulating the RFC because it failed to specify the claimant's functional limitations).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 10)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: July 25, 2024                          s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 25, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

21